UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RAMI K. KARZON,                         )
                                        )
      Plaintiff,                       )
                                        )
vs.                                     )   Case No. 4:13-CV-2202 (CEJ)
                                        )
AT&T, INC., d/b/a Southwestern Bell     )
Telephone Company, Inc., et al.         )
                                        )
      Defendants.                      )

MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed.

I.    Background

Plaintiff Rami Karzon was employed by defendant Southwestern Bell Telephone Company[1] (Southwestern Bell) from April 2004 until his termination on October 2, 2012. Defendant Eric Simpson became plaintiff's supervisor on January 1, 2012. Plaintiff alleges that defendant Simpson subjected him to a hostile work environment and unequal discipline, and unlawfully terminated his employment based on plaintiff's

---

[1] Plaintiff sued "AT&T, Inc., d/b/a Southwestern Bell Telephone Company." Defendants state that AT&T Inc. was not plaintiff's employer and does not do business as Southwestern Bell Telephone Company. Rather, plaintiff was employed by Southwestern Bell Telephone Company, which is a wholly-owned subsidiary of AT&T Inc. See Notice of Removal at ¶ 8; Memorandum in Support of Motion to Compel Arbitration at 2 [Doc. #8]. The arbitration agreement at issue applies to the employees of any "AT&T company." Thus, any confusion as to the correct name of plaintiff's employer has no effect on the Court's analysis.

status as a Muslim Arab born in Jordan. He brings suit pursuant to the Missouri Human Rights Act (MHRA), §§ 213.010 *et seq.*

In late 2011, AT&T Inc. notified employees by email that it had implemented an arbitration program to resolve disputes between the AT&T companies and their employees. The email included a link to a web page containing the text of the arbitration agreement. Plaintiff received the email on December 1, 2011. AT&T's records establish that plaintiff accessed the email and associated web page that day.

The text of the contained the phrases "**REVIEW REQUIRED**" and "**Action Required: Notice Regarding Arbitration Agreement.**" Email, Ex. 1 to Decl. of Kathleen A. Maytola [Doc. #8-1]. The email stated: "The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.**" The email also stated that employees had until Monday February 6, 2012 "to opt out -- that is, decline to participate in the arbitration process -- using the instructions below. If you do not opt out by the deadline, you are agreeing to the arbitration process set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement." Employees were informed that there would be no adverse consequences for anyone who opted out of the arbitration agreement. A phone number was provided for any employee who experienced "any pressure or retaliation in connection with your decision." The email concluded: "**Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration.**"[2]

---

[2]The quoted language in boldface type is as it appears in the original document.

AT&T records establish that plaintiff entered his unique username and password to access the web page containing the text of the arbitration agreement. The web page reiterated that anyone who did not want to participate in the arbitration program had to opt out no later than February 6, 2012, and provided a link to a site where employees could register their decision to opt out. Employees were asked to review the agreement and click a "Review Completed" button, regardless of whether they chose to participate or opt out. Plaintiff clicked the "Review Completed" button.

The arbitration agreement applies to "any claim" an employee has against any AT&T company, its officers, director, employees and agents, and its parent, subsidiary and affiliated entities and "any claim that the Company or any other AT&T company may have against [an employee]." Discrimination or harassment claims arising under federal and state laws are among those covered by the agreement. Agreement, Maytola Decl. Ex. 2.

II. Discussion

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of the FAA was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts. Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999). Arbitration agreements are examined in the same light as any other contractual agreement. Id.; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (courts required to enforce arbitration agreements according to their terms). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

In addressing a motion to compel arbitration, courts generally "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." 3M Co. v. Amtex Security, Inc., 542 F.3d 1193, 1198 (8th Cir. 2008) (citations omitted). Plaintiff does not dispute that his claims fall within the terms of the arbitration agreement; rather, he challenges the validity of the agreement.

Plaintiff suggests that the arbitration agreement is not valid because there is no written document. However, an email agreement to arbitrate satisfies the FAA's requirement for a written agreement. Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 556 (1st Cir. 2005) (the E-Sign Act, 15 U.S.C. § 7001(a), "likely precludes any flat rule that a contract to arbitrate is unenforceable . . . simply because its promulgator chose to use e-mail as the medium to effectuate the agreement"). Plaintiff also argues that there is no agreement to arbitrate because it is not signed. "Although . . . the FAA requires arbitration agreements to be written, it does not require them to be signed." Tinder v. Pinkerton Sec., 305 F.3d 728, 736 (7th Cir. 2002) (citing Valero Refining, Inc. v. M/T Lauberhorn, 813 F.2d 60, 64 (5th Cir. 1987)).

The validity of an arbitration agreement is determined by state contract law. E.E.O.C. v. Woodmen of World Life Ins. Soc., 479 F.3d 561, 565 (8th Cir. 2007). Under Missouri law, the basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract. Citibank (S. Dakota), N.A. v. Wilson, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005). Plaintiff asserts that there is no evidence that

he accepted the offer because he did not sign the agreement. However, Missouri contract law does not require acceptance of an offer to be made "by spoken or written word." Id. (citation omitted). "An offer may, instead, be accepted by the offeree's conduct or failure to act." Id. Here, plaintiff was provided with ample notice of his right to opt out, the means by which to do so, and the date by which he was required to exercise his right to do so. By failing to opt out, he affirmatively accepted the arbitration agreement. See Cicle v. Chase Bank USA, 583 F.3d 549, 555 (8th Cir. 2009) (arbitration agreement that was deemed accepted by failure to opt out not unconscionable under Missouri law).

Plaintiff cites Campbell v. General Dynamics, Gov't Syst. Corp., 407 F.3d 546 (1st Cir. 2005), for the proposition that "doing nothing" cannot constitute acceptance of an offer. As in this case, the defendant in Campbell notified its employees by email that it had adopted an arbitration policy for resolving disputes with its personnel. The First Circuit declined to enforce the arbitration agreement because the email notification failed to give the employee adequate notice that he was waiving his right to a judicial forum. In particular, the email "undersold the significance of the [Dispute Resolution] Policy and omitted the critical fact that it contained a mandatory arbitration agreement." Id. at 558. While the email contained links to the arbitration policy and handbook, the employer failed to record whether recipients clicked on the links and thus could not contradict plaintiff's claim that he never saw the arbitration policy or handbook. Id. at 549. "[I]n our view, an e-mail, properly couched, can be an appropriate medium for forming an arbitration agreement." Id. at 555. "[W]e easily can envision circumstances in which a straightforward e-mail, explicitly delineating an arbitration agreement, would be appropriate." Id. at 555-56. The sole issue in

Campbell was the adequacy of the employer's notice to its employees, not the validity of the agreement or its means of acceptance. In this case, plaintiff does not dispute that he received the email and reviewed the arbitration agreement and thus had adequate notice.

Plaintiff next argues that the arbitration agreement fails for lack of mutual consideration. "Consideration generally consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Marzette v. Anheuser-Busch, Inc., 371 S.W.3d 49, 52 (Mo. Ct. App. 2012) (citation omitted). "Generally, if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration." Id. at 53 (internal quotation and citation omitted). Plaintiff correctly argues that the offer of continued at-will employment is not adequate consideration for an employee's agreement to submit all claims to arbitration. See, e.g., Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 26-27 (Mo. Ct. App. 2008). In this case, however, consideration is not based on an offer of continued employment, but on AT&T's promise to submit any defenses it may have to arbitration as well. Under Missouri law, a mutual agreement between employer and employee to arbitrate is enforceable. See McIntosh v. Tenet Health Sys. Hospitals, Inc./Lutheran Med. Ctr., 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) ("We conclude this arbitration clause contemplates a mutual agreement between the parties to submit to [arbitration] and thus constitutes an enforceable contract."). The arbitration agreement does not fail for lack of consideration.

Plaintiff also argues that the arbitration agreement is not enforceable because it does not include the following language as required by Missouri law: "THIS

CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." § 435.460, Mo. Rev. Stat. The FAA controls this action and Missouri's Arbitration Act is preempted. Rosemann v. Sigillito, 877 F. Supp. 2d 763, 775 (E.D. Mo. 2012) (requirements of § 435.460 do not apply to case governed by FAA). See also Bunge Corp. v. Perryville Feed & Produce, Inc., 685 S.W.2d 837, 839 (Mo. 1985) (*en banc*) (Missouri Arbitration Act "may not be applied to defeat the arbitration provision of a contract which is within the coverage of the [FAA]"); see also Paetzold v. Am. Sterling Corp., 247 S.W.3d 69, 74 (Mo. Ct. App. 2008) (§ 435.460's requirement does not apply to cases governed by FAA).

Plaintiff requests an evidentiary hearing to determine whether there is a valid, enforceable arbitration agreement. Because the relevant facts are not in dispute, a hearing is not required.

\* \* \* \* \*

For the foregoing reasons, the Court concludes that the agreement to arbitrate is valid and that plaintiff's claims under the MHRA fall within the scope of the agreement. Under the FAA, when a court finds the claims raised in an action are properly referable to arbitration, it should generally stay the action until arbitration proceedings are concluded. Fleischli v. North Pole US, LLC, 4:12CV1618 CDP, 2013 WL 1965120 (E.D. Mo. May 10, 2013) (citing 9 U.S.C. § 3).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel arbitration [Doc. #7] is **granted**.

**IT IS FURTHER ORDERED** that this matter is **stayed** pending completion of arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a notice to the Court within ten days of the conclusion of arbitration. If the arbitration is not concluded by July 1, 2014, the parties must on that date file a joint report setting forth the status of the arbitration.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of January, 2014.